May it please the Court, Jonathan Wood for the Appellant, Kansas Natural Resource Coalition. In Kukana, the Supreme Court held that under this sub-chapter, in a provision addressing judicial review is ambiguous as to the review of agency action and can only be interpreted with reference to context and the strong presumption favoring judicial review of agency action. Before we get to the Congressional Review Act, I have some questions on standing. Let's talk about injury in fact. What's the injury in fact here? So the injury is a procedural injury and I think that's the important place to start in this case. You have two issues that the government doesn't address in its brief that weigh strongly in our favor. The first is the procedural posture of this case. This case is up on a motion to dismiss, so the specific allegations for our standing have to be presumed from our general allegations. And we've raised a procedural violation case, which the Supreme Court in Lujan and Summers said has relaxed standing requirements. I think the closest analogy to this case is the D.C. Circuit's NRDC case, which applied that rule to a petition under the APA. A party can generally petition for rulemaking and if the government doesn't... But weren't those cases that involved rights such as freedom of speech and different types of rights than we have here? No. So the right at issue in NRDC was the right with the process. The NRDC wanted the agency to issue a rule which would affect its interest and the court held that in that context, standing can't be denied simply because actually getting relief depends on whether the agency adopts the rule, how it enforces it, how it affects third parties. But the procedural rule there was based on Spokio, right? And the idea was that it is to vindicate an individual's concrete interest. This is a little different, isn't it? I don't think so. The interest that KNRC has in its conservation plan, it's true it's not a First Amendment interest, but for standing, I don't think that matters. Here, the implementation of their plan is affected by the procedural violation. How their plan will be reviewed... So if you have general allegations that there's anybody who refused to join or agree to your plan as a result of the fact that it hadn't been submitted under the CRA, what are the effects of the failure to have it approved under the CRA? So that is true. I think at the motion to dismiss stage, that kind of specific allegation has to be presumed from the general allegation. Well, you've got to have general allegations from which you can presume a concrete injury. And I don't see them in the complaint. So you best point them out. Sure. And I'm happy to do so. I apologize for stepping away from the microphone while talking. So the allegations in the complaint are framed in terms of the peace rule, the rule that we want to see submitted to Congress and put into effect. And most of them are contained in paragraphs, and I'm sorry for rifling through the papers, paragraphs 42 and 43. And they focus on the fact that if this rule is in effect, it will govern the review of KNRC's conservation plan in listing decisions. The peace rule, which we cite throughout the complaint, says that the burden is on KNRC to establish that landowners will participate in the peace rule. And so we allege that that is made more difficult by the procedural violation. And also, if the rule is not in effect, which I think this Court has to presume for purposes of this appeal because of the procedural posture, you have to assume and presume that the agency won't implement the peace rule in the listing decision that will happen in approximately 12 months. Do we have an immediacy problem? I don't think so, because there are two. I mean, it seems that you're relying on would'ves and could'ves and all of these things really could play out over a very long period of time, maybe. The first response is that's always true in a procedural injury case. The petition example I gave you earlier, the injury and the redressability depended on many things that would happen in the future, like whether the agency would ultimately adopt the rule and how it would implement it. Here I think we have two immediate effects, which is that recruiting landowners in counties is more difficult. KNRC can't go to the county. But you didn't, I mean, your allegations are actually to the contrary, that everybody joined in this PECE, and there's no allegations that there was even a single entity that said I'm not getting involved because this is uncertain, whether it even be enforced. I disagree. We do not allege that everyone is already participating. So we do say that there are landowners who have participated in conservation work, and that is important to stress. That shows why our plan is viable. But at this stage of the case, the allegations have to be interpreted in our favor, presumptions have to be drawn in our favor. But you also have the burden to prove standing. That's true. So it's not quite as clear as you're making it. Again, I think the key point is that this is a procedural injury case where the standing burdens are relaxed, as the Supreme Court has said. Our general allegations are framed in terms of our burden under the PECE rule, which is we have to recruit landowners today. The government seems to assume that we should be going to landowners and ignoring this legal problem we've discovered. So right now, as a legal matter, the PECE rule is not in effect. And we don't think that we can lie to counties or property owners and suggest otherwise. Well, when you say it's not in effect, what do you mean? Legally in effect or has no effect whatsoever? I mean that the consequence of not submitting a rule under the CRA, which we've alleged and is not challenged for purposes of this appeal, this rule is not in effect. And that is a clear consequence of the CRA's Section 801. There's a difference between the CRA's Section 801 and the CRA's Section 801. There's a difference between saying whether that violation is judicially reviewable with what that means as a legal matter. So the implication of our complaint in alleging that this rule hasn't been submitted is that the PECE rule is not yet lawfully in effect. And if you, as courts often do, assume the agency will follow the law going forward, I think the implication, the presumption would be that they won't apply the PECE rule in the listening session. Well, how do you make that assumption? Courts do it all the time. They assume agencies will follow the law. To rule against us, I think... But the law isn't that they can't impose, that they can't use. I mean, the law is they're supposed to consider any plans or any ways in which the impact will be reduced. And so there's nothing that would suggest that they would refuse to consider the PECE plan. Well, perhaps I misspoke. The law that I was referring to was the CRA. Under the CRA, if a rule is not submitted to Congress, it is not lawfully in effect as a matter of law. And we've provided all the allegations to support that legal conclusion. And if you accept that, and again, for purposes of this stage of the case, I think that's where the case is and that's how the case comes to you, it would be odd to deny us standing on the presumption that the agency will sometime in the future apply the PECE rule. Apply a rule that is not lawfully in effect. And that's really what the government is arguing. For parts of its brief, it argues the general rule that agencies are presumed to follow the law, but for this point on standing, they take the opposite view. They ask you to assume that in the future, because they violated CRA in the past a couple of times, they ask you to presume that they will do it again. And I don't think that our standing can be denied based on that. But the other two points I'll add are that even if our complaint lacks that level of specificity that Your Honor was asking about, that is a curable defect, that would mean that we should be allowed to amend on remand. And given that the district court's decision on 805 would absolutely bar review anyway, we would ask the court to reach that issue, too, so that a remand would not be... So now we get to talk about 805. Yes. And the other reason why I was going to turn there is that, as Your Honor wrote a few weeks ago in the Renewable Fuels Association case, the presumption favoring judicial review of agency action also plays a role in standing. Courts don't interpret standing in a procedural case like this to bar all parties from the courthouse door, which is one of the reasons, as I said, the Supreme Court has adopted a more relaxed view on standing in procedural violation cases like this one. On 805, I think the key case for us is Kakuna. There the court was confronted with another statute that the government initially claimed barred judicial review. The court isolated the phrase under this subchapter, found it ambiguous, and therefore had to look to context and the presumption favoring judicial review. We ask you to do the exact same thing here. The operative language in 805 uses under this chapter, which is for all practical purposes the same. And if you apply the presumption, we think that we win, because every factor this court has identified for applying that presumption favors us. Several provisions of the statute... I'm sorry, I don't mean to... Yeah, under... I mean, if you look at their use of under this subchapter, the issue was whether you could look to regulations as well as the statute. It was a very different context than we have here. Would you agree with that? I agree, but the basic point that under is ambiguous and has to be interpreted in light of context and the presumption does apply here. Well, if you look at the language of the CRA, it's modifying under this chapter modifies determination, finding, action, or omission. So the question is whether we have an omission under this chapter. And the effect... It seems to me it's pretty clear. I don't think so, and I don't think that's consistent with Kukuna. Because it's true that the language in that statute was different, but the language the court looked at and found the ambiguity was under this subchapter. It was under itself, which the court said is inherently ambiguous and requires appeals to context and the presumption favoring judicial review. If the court applies that rule here, as I said, every factor that the court would look at favors judicial review. Well, if we were trying to decide whether this was governed by the language in the statute in 805 or a regulation that was passed interpreting 805, I would agree with you that we look to Kukuna. But I don't think that that's what we're dealing with here. That's true, but that would limit Kukuna to its facts. The analysis the court applied wasn't about the difference between a statute or regulation. The court found the ambiguity in the phrase under this subchapter. Here, the ambiguity, I think, is how broadly you interpret that phrase, the exact same problem that was at issue in Kukuna. We think the best reading, and the one that's, I think, confirmed by the other provisions of the text, as well as the legislative history and several courts that have adopted this approach, is that Congress was shielding its own discretionary decisions about how to review a rule from judicial review. This is the first time Congress was inserting itself into the APA process, and it didn't want to extend the presumption favoring judicial review and arbitrary and capricious review to its own actions. And that's what the sponsor said. That's the narrow view. The government takes the far broader view that undermines everything. Let me stop you there. How much influence does legislative history have when it is entered into the record after the statute is passed and voted on by Congress? That's certainly a relevant factor. The Supreme Court in Woods said that it still has to be considered for persuasiveness. But, of course, you're right. Because of the way this statute was enacted, and there is legislative history from before enactment that explains this, there was not an opportunity to prepare a committee report. This post-enactment statement was intended to serve that purpose. That, I think, does weaken the weight it gets, but it's still entitled to consideration for persuasiveness. And the legislative branch, courts, the executive branch have all given that statement effect and relied on it in interpreting the CRA, and we would ask the court to do so here, too. And with that, I have two more minutes left for rebuttal that I'd like to reserve. Thank you. Thank you. May it please the Court. Brian Toth from the Department of Justice representing the Appalese. The district court correctly held that Section 805 of the Congressional Review Act bars review of plaintiffs' claims here, which allege an omission of not following the report to Congress procedures in Section 801 of the Act when the Fish and Wildlife Service adopted its 2003 policy or rule. In addition, there are two threshold grounds that this Court could rule on and also affirm the judgment below. They adequately and independently support affirming the judgment. Plaintiffs both lack standing, and their claim is time barred under the six-year statute of limitations. Now, before getting to the meat of the Congressional Review Act issue, and I do want to note that I will expressly demonstrate that the presumption of review is expressly rebutted and overcome by the Congressional Review Act, including Section 805's plain text, as well as the weight of judicial authority. But before I do that, I do want to make a few comments on plaintiffs' lack of standing. This case arises in a highly peculiar posture. The plaintiffs actually support the 2003 regulation and its substance, but they claim to have found a legal defect that only they have identified. No other litigant has ever challenged or identified, to our knowledge, the Congressional Review Act as a barrier to implementing the 2003 policy by the Fish and Wildlife Service. Plaintiffs claim, based on this legal defect they've alleged and found, that there's legal uncertainty and they are unable to get enough members to join their conservation plan, and that somehow down the line there's going to be a chain of events that occurs by which their plans will not be considered fully effective because of this Congressional Review Act reporting deficiency they identify. Isn't that enough? No. First of all, it's self-created uncertainty, self-inflicted harm. They're the only ones who've ever identified this legal theory as a way of invalidating the 2000s. So you're saying they should just go along and, say, pretend that the rule is effective and proceed to attempt to get members to join in their cause? It's all okay? That's what it is. That is the rule is, you would say the rule has some effect, if not legal effect, some effect? Well, we have defenses on the merits. I mean, I'm not even getting into our defenses to effectiveness, and we didn't present them in the district court, but there are exceptions to the reporting requirements. And I will just point them out for your knowledge. In 804.3c, an agency rule procedure or practice that does not substantially affect the rights or obligations of non-agency parties doesn't have to be reported to Congress. It's still a rule under the APA, but it fits an exception. Here, at the end of the Federal Register Notice for the 2003 rule, the Fish and Wildlife Service did a whole regulatory flexibility analysis and concluded that the policy does not substantially affect small business entities or create economic effects greater than whatever the threshold is under the Regulatory Flexibility Act, which my friend has cited in their brief for their judicial review provision under that statute. But I just want to preview that as a potential way that this rule could still comply with the CRA and nonetheless be in effect despite that it was not reported to Congress. Well, turning back to standing, according to the plaintiffs here, their burden is very light at this stage of the litigation in terms of pleading enough to conclude that they have standing. Do you agree with that? It's a lighter burden. I would point the Court to the Ninth Circuit's recent decision in the Center for Biological Diversity case. That Court also rejected a constitutional challenge that they rejected on lack of standing grounds. They rejected one of several constitutional challenges to an action that an agency had taken to withdraw a rule after Congress had actually disapproved it under the Congressional Review Act. And as far as the challenge that was brought under the non-delegation theory, the Ninth Circuit said plaintiffs lack standing there because there is a conjectural chain of events that has yet to occur and it's too speculative to support standing. That, too, was a motion to dismiss. That, too, would be subject to the same factual standards here. And I think the complaint is conflicting on what they allege that would be necessary to embrace the facts of any injury. On, I believe it's pages 18 to 19 of the appendix, paragraphs 33 and 37 of the complaint, they allege that the plan is going along and actually having effects. It says on page 18, in the five years since the plan was developed, the species population has nearly doubled. And then on page 19 at the bottom, it says, since the Fish and Wildlife Service withdrew this listing in 2016, voluntary conservation efforts, ellipsis, have continued. So, you know, at best, the complaint is of two minds on whether there's an actual legal uncertainty. But, you know, to get to something more fundamental. But the fact that it's having an effect doesn't mean it's not uncertain. Fair enough. To get to something more fundamental, and I think, Judge McHugh, you focused on the Endangered Species Act itself requires efforts by, conservation efforts by states and localities to be taken into account. That's under 16 United States Code section 1533B1A. So regardless of whether the policy is actually in effect, the statute itself requires the service to take into account the types of plans that plaintiffs have developed. It's a policy that gives the framework for the Fish and Wildlife Service to get more deference from the courts. When it evaluates whether a plan that has not yet been implemented or not yet proven to be effective, nonetheless is likely in the future to ameliorate concerns about species. But that policy provides an extra layer of deference when the Fish and Wildlife Service follows it, but it's not the core statutory requirement. It still underlies the dispute here and still would require the service to take into account the plan. So you're basically saying they're not harmed? They haven't alleged facts demonstrating that they are harmed. One more thing about this policy that may be worth thinking about is that it is intended to apply to conservation plans that have yet to be implemented or yet to be shown to be effective. Now, they allege that their plan was adopted in 2013. I think the Fish and Wildlife Service's proposed rule was around 2014, and then it was litigated, set aside in 2015. That's seven years that the plan now has been in existence. There may be changed facts on a record in a future case whereby the policy might not need to be applied in the same way because there may be an empirical record of how this policy from 2013 or their conservation plan from 2013 was actually implemented over the past seven years. So the policy may not come into effect ultimately. Well, is this part of your statute of limitations argument that they should have brought their action back in 2014 when it was apparent the PECE plan was not submitted under the CRA? They could have brought it much earlier than that, but it's similar. There are similar facts involved. I think I was trying to emphasize for standing the speculative chain of events that would have to occur for them actually to suffer injury. And although they say the standards for injury are, excuse me, they say the standards for standing are relaxed because of the procedural allegation they allege, that's, I believe, only true for addressability and causation. They still have to allege a concrete injury that affects their concrete interests, despite the procedural violation. It's not enough after summers, for example, for them just to say, well, the procedures weren't followed, we're injured because of that. They have to say their actual interests were affected. So I would like to turn briefly to the Section 805 issue. The district court got this correct, and the presumption of reviewability here that agency actions are afforded is rebutted and overcome both by the plain text of Section 805 as well as the purpose. Well, let me ask you this. If we say, yes, the plain text says we lack jurisdiction to review whether an agency submits a new rule for review to Congress, doesn't that completely undermine the purpose of the CRA? I don't think so because the CRA was about the relationship between Congress and the executive branch. The courts, you know, there is a presumption of reviewability, but if Congress wanted to create a private right of action specifically for citizens who allege that agencies have not submitted these rules to Congress, Congress knew how to do so. It created detailed judicial review provisions when it amended Section 611 of Title V of the United States Code. That's the Small Business Regulatory Enforcement and Fairness Act that they initially in 1980, when they passed the statute, provided a more broader judicial review provision. But then when that was found to have been abused by the agencies, Congress went in and provided more detail about the rights that are afforded to litigants to allege those types of claims. It could certainly do so. Well, don't we have a provision in the CRA that talks about severability? Yes. How are we to interpret that? Doesn't that include an assumption at least that courts can be involved? For constitutional challenges, I think that's already been- So that's how you would narrow it? That's how I would narrow it. Constitutional challenges only. Well, I think that's supported by what the Ninth Circuit did at the end of December in the Center for Biological Diversity case. The case came in after briefing, but we submitted a 20HA letter. And there were actual constitutional challenges there, and the Ninth Circuit found them reviewable, found that there's a heightened standard under Webster against Doe that Congress is held to if it is going to exclude constitutional challenges. The CRA does not satisfy that standard, and the Ninth Circuit, therefore, held that the constitutional claims were reviewable, but then went on to hold that the statutory claims were not. So that still gives meaning to the severability clause. It renders it meaningful. It does not make it surplusage. So I don't think that construction, canon of construction, helps the plaintiffs here. And I do think- Okay, but the practical implication of no review for a failure to submit a rule is there's no incentive whatsoever on any agency to submit a rule for review, right? I don't think that's right. I mean, Congress has-we've outlined this in our brief about all the different powers Congress has through controlling appropriations to put the pinch on agencies if they're following rules that Congress disagrees with. And Congress, in the context of the Endangered Species Act-I mean, I think the Gray Wolf Appropriations Rider is instructive. I think the Greater Sage Grouse Appropriations Riders are very instructive here. When Congress becomes aware of a rule under the Endangered Species Act that it disagrees with, it has not hesitated to act. It has not hesitated to direct, for example, the service not to finalize a rule that it has proposed and is working on. And when courts reach conclusions about proposed withdrawals of listing decisions, Congress has overridden at least one of those decisions in the Gray Wolf Appropriations Rider. So Congress does have tools to enforce what it believes is the proper view of Endangered Species Act rules, despite a failure to report. I would emphasize that this 2003 policy is a little bit different than the typical ESA listing rule in that it is not directly regulating the plaintiffs here. It is not-it actually benefits them. And it benefits them in a secondary way. It's principally about the procedures that the Fish and Wildlife Service follows in taking into account plans like the one that the plaintiffs developed here. And so ultimately it helps them. But even if it were a regulatory rule, the concerns that I think some in the regulated community may have about failures to report rules are taken care of in a large part by executive orders that the President has issued in October of last year. We didn't cite these in our brief, but there is an executive order addressing agency guidance. It's Executive Order 13891. This isn't critical to our argument, but I think it illustrates that there are purposes here that are being addressed by the executive branch and that should ameliorate any concerns that Congress has about failures to report. That executive order requires agency guidance to go through a process of, in some cases, review by the Office of Management and Budget, which incidentally this 2003 rule was actually reviewed by. Is it fair for the plaintiffs that they are not being consulted or involved in this listing and management of prairie chickens? Is that at the core of this? Local control versus federal government? I think it does have to do with local control. They prevailed on claims that the service did not adequately consider their plans, and they got the relief that favored them. So in that sense, I struggle to understand how we might articulate the injury that they're claiming, but I think it has to do with how much control is retained by the localities versus the federal government. Maybe they're seeking more certainty, more certainty in that control. Sure. And that's fair, and as are all regulated entities. But, you know, we point out in the ripeness context, the Supreme Court in the National Parks Hospitality case has said that's not enough. I see my time is up, but if I could just conclude my sentence. That's not enough. Improving legal uncertainty does not support a justiciable case or controversy. So, too, the plaintiff's not standing here. Otherwise, the district court's judgment should be affirmed on the CRA issue. Thank you. If I can, I want to respond to two points, maybe my friend on the other side. The first is that the peace rule is not only about the service's interest or internal. It also protects regulated parties like counties and local property owners. And if the agency submits the rule and it goes into effect, that means it's also enforceable against the agency. I think the previous case in 2014 the government points to is important. There, a regulated party used the peace rule that the agency hadn't followed in order to get a good outcome. Now that we've discovered this rule is not lawfully in effect, I don't think we could do that again. So we have a listing coming up in a year. If the agency doesn't follow the peace rule, the government's position seems to be that we should go to court, say that they didn't follow a rule that is not lawfully in effect since it wasn't submitted to Congress, and we would somehow prevail again. And I don't see how that can work. If the allegations in our complaint are taken as true as they must at this stage, that rule is not lawfully in effect. Submitting it would give us all the relief we've requested. It would cause no particular burden to the agency. They admit that it is a relatively small inconvenience for them to send the paperwork over to Congress. And it would put all of this issue to bed. The rule would be lawfully in effect. Do we have any other case where this type of approach has been used? That is, requiring an agency to act under the CRA? There have been some district court cases that have held judicial review available under the CRA, and the agencies have complied, the most recent one being the Tugaw Ranches case. Outside the CRA context? For failure to act. That is, we want a declaratory judgment from the court requiring the agency to act in a certain way. Yes. On the legal issues, those cases are essentially the same. The motions to dismiss are essentially the same. The court held that it's judicially reviewable, and within a matter of months, the agencies had submitted their rules and the case was resolved. And with that, I see that I'm out of time, so unless there are any other questions. Thank you. Thank you both for your arguments. The case is submitted. Thank you. Our next case for argument.